IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WENDY TRIEM,<br><br>            Plaintiff,<br>     v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, INDIAN HARBOR INSURANCE COMPANY, and TOYIN ALDER,<br><br>            Defendants. | Case No.: 3:21-cv-00710-AN<br><br><br>OPINION AND ORDER |

Plaintiff Wendy Triem brings this action against defendants State Farm Fire and Casualty Company ("State Farm"), Indian Harbor Insurance Company ("Indian Harbor"), and Toyin Alder ("Alder"), alleging claims for declaratory judgment, breach of contract, negligence, negligence per se, fraud, defamation, and outrageous conduct/intentional infliction of emotional distress ("IIED"). Indian Harbor moves to dismiss plaintiff's claims for defamation and IIED pursuant to Federal Rule of Civil Procedure 12(b)(6). After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated herein, defendant's motion is DENIED.

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of

1

truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inference from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

One night in early April 2019, plaintiff Wendy Triem took an Uber out to meet with two friends. Pl. Third Am. Compl. ("TAC"), ECF [119], ¶¶ 24, 26. The trio chose to use rideshare services to get home from their night out, and in the early morning hours of April 6, 2019, plaintiff hailed an Uber while, unbeknownst to her, her friend Kristina Kalkman ("Kalkman") simultaneously hailed a Lyft. *Id.* ¶¶ 26, 29-30, 33. Plaintiff was told that Kalkman had ordered an Uber, so plaintiff canceled her own Uber request. *Id.* ¶ 31. Alder, who drove for both Lyft and Uber, accepted Kalkman's ride request on behalf of Lyft and picked the trio up. *Id.* ¶¶ 34-42. Plaintiff later learned that Alder had accepted rides through both apps that night and had canceled at least three rides via the Lyft app since he started driving earlier that evening. *Id.* ¶¶ 27-28, 32. Upon entering Alder's vehicle, plaintiff asked Alder if he was the trio's "Uber driver." *Id.* ¶ 41. Alder confirmed, and then canceled the pending Lyft ride to accept another. *Id.* ¶¶ 44, 46. During the ride, plaintiff became suspicious and asked Alder to pull over to let the trio out, when

another car suddenly struck Alder's vehicle. *Id.* ¶¶ 45-49. Plaintiff sustained significant injuries from the accident. *Id.* ¶¶ 49, 119-120.

In 2019, plaintiff submitted a proof of loss for personal injury protection and an underinsured motorist claim to both Lyft and defendant Indian Harbor ("Indian Harbor"). *Id.* ¶¶ 61, 65, 68, 73. Lyft and Indian Harbor denied coverage, and plaintiff eventually initiated the instant case in Multnomah County Circuit Court on April 2, 2021. *Id.* ¶¶ 68, 74. Defendants removed the action on May 7, 2021. Notice of Removal, ECF [1]. Plaintiff filed an amended complaint prior to removal and a second amended complaint in June 2021. *See* Notice of Removal 3; Pl. Second Am. Compl., ECF [16]. On October 8, 2021, Indian Harbor accepted coverage on behalf of Lyft for both personal injury protection insurance and underinsured motorist coverage. TAC ¶ 75. Indian Harbor did not inform plaintiff of why its coverage decision had changed. *Id.* ¶ 76.

In fact, plaintiff alleges that Indian Harbor withheld pertinent discovery relating to the coverage decision, including discovery related to whether Alder had accepted the ride request in the first instance. *Id.* ¶¶ 63, 66-67, 69, 72, 76-78. As a result of the failure to produce certain material discovery, plaintiff contends that her "ability to seek compensation against Lyft for its actions" was compromised. *Id.* ¶¶ 77-79. Plaintiff further alleges that it was only after Lyft's dismissal that Indian Harbor represented to plaintiff that because Alder had canceled the ride in the Lyft app, Indian Harbor's underinsured motorist insurance policy limit was $50,000—not $1,000,000. *Id.* ¶¶ 76-80. Plaintiff additionally alleges that despite continuing requests for all surveillance taken of plaintiff, Indian Harbor produced no surveillance to plaintiff during discovery. *Id.* ¶ 105. Eventually, following Lyft's dismissal and other pertinent rulings that effectively narrowed the scope of the issues in this case, the parties stipulated to staying the action in February 2023 to submit the issue of assessing plaintiff's damages to a private and binding arbitration proceeding. *Id.* ¶ 101; Stip. Mot. for Stay, ECF [95].

A two-day arbitration hearing took place. TAC ¶ 102. During the hearing, Indian Harbor made representations that plaintiff is a liar and is dishonest about her injuries and the effects of those injuries. *Id.* ¶¶ 103-104, 189. Specifically, plaintiff alleges that Indian Harbor (1) showed a surveillance

video that it never produced in discovery; (2) claimed that plaintiff's counsel and two of plaintiff's doctors had orchestrated a series of seminars across the country that Indian Harbor, by and through its counsel, called a "traveling roadshow" aimed at teaching lawyers how to handle fraudulent traumatic brain injury cases; and (3) outright accused plaintiff of the crime of insurance fraud. *Id.* ¶¶ 103-105, 190, 194, 205. Further, Indian Harbor did not provide to either plaintiff or the arbitrators Indian Harbor's sole medical expert witness's primary file review report, which conceded to some of plaintiff's injuries and that other of her injuries were outside of the expert's practice. *Id.* ¶¶ 108, 193. The same expert then testified at the arbitration hearing in direct contradiction to the unproduced file review report. *Id.*; Pl. Resp. to Mot., ECF [123], at 7-8. On December 9, 2023, the arbitrators issued a ruling that assessed plaintiff's total damages at $2,550,000. TAC ¶ 102. In January 2024, the Court lifted the stay in this action and ordered plaintiff to file a motion for leave to amend her complaint. *See* Order of January 29, 2024, ECF [106].

Plaintiff filed the Third Amended Complaint ("TAC"), ECF [119], which is the operative complaint, on May 7, 2024. Indian Harbor now moves to dismiss two of plaintiff's claims, for defamation and IIED.

## DISCUSSION

Indian Harbor moves to dismiss plaintiff's defamation and IIED claims against it, arguing that these claims are "based solely on the statements and conduct of Indian Harbor (and specifically its attorneys) in the context of litigation." Def. Mot. to Dismiss ("Mot."), ECF [120], at 2. Indian Harbor further argues that "litigation-related conduct is protected by the absolute litigation privilege and is not actionable as a matter of law." *Id.*

A.  **Oregon's Absolute Litigation Privilege**

As an initial matter, state substantive law applies. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Thus, this Court applies Oregon law. "Oregon courts have long recognized, and enforced, an absolute privilege for statements [made] in the course of or incident to judicial and quasi-judicial proceedings." *Mantia v. Hanson*, 190 Or. App. 412, 417, 79 P.3d 404 (2003). The scope of the privilege is a liberal one: it encompasses "actions taken and statements made in connection with a judicial

proceeding," *Franson v. Radich*, 84 Or. App. 715, 719, 735 P.2d 632 (1987), and it "embraces anything that may possibly be pertinent," *Wollam v. Brandt*, 154 Or. App. 156, 163, 961 P.2d 219 (1998) (citing *Irwin v. Ashurst*, 158 Or. 61, 70, 74 P.2d 1127 (1938)); *see Davoodian v. Rivera*, 327 Or. App. 197, 216, 535 P.3d 309 (2023) ("The privilege applies to 'statements or writings made during or as part of the litigation itself' and to 'similar statements which are made by a lawyer outside of the pleadings and actual trial of the case' if the statements or writings have 'some relation' thereto." (quoting *Chard v. Galton*, 277 Or. 109, 113, 559 F.2d 1280 (1977))). While the privilege initially arose as a bar to defamation claims, it has since been extended to bar "any tort action." *Wollam*, 154 Or. App. at 162 n.5. The "privilege applies equally to parties to proceedings and to their attorneys." *Mantia*, 190 Or. App. at 417 (collecting cases).

In interpreting the absolute litigation privilege, Oregon courts have looked to the Restatement for guidance. *See, e.g.*, *Lee v. Nash*, 65 Or. App. 538, 542, 671 P.2d 703 (1983) (quoting Restatement (Second) of Torts § 586 (Am. L. Inst. 1977)). Section 586 of the Restatement describes the controlling principle underlying the privilege:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

Restatement (Second) of Torts § 586 (Am. L. Inst. 1977). Comment a to Section 586 goes on to explain the public policy upon which the privilege is based:

> "The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore, the privilege is absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity. . . . The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding."

*Id.* § 586 cmt. a.

In Oregon, the controlling case on the scope of the privilege is *Mantia*. Despite being monikered as an "absolute" privilege, the court in *Mantia* made clear that "[e]ven a recognized privilege may be overcome when the means used by defendant are not justified by the reason for recognizing the

5

privilege." 190 Or. App. at 429 (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 210, 582 P.2d 1365 (1978) (en banc)) (internal quotation marks omitted). Put differently, "even a defense of absolute privilege cannot defeat a [tort] claim . . . where the nature of the defendant's conduct was such that the underlying purposes of the privilege would not be served by immunizing the conduct." *Id.* The *Mantia* court went on to explain:

> "When is an absolute privilege not absolute? But at least with respect to the absolute privilege pertaining to participation in judicial and quasi-judicial proceedings, there is a ready answer: An actor's conduct is so egregious as to be deprived of the protections of the absolute privilege when that conduct satisfies the elements of wrongful initiation. Thus, the prosecution of unfounded litigation constitutions actionable 'improper means' for purposes of tortious interference where (1) the plaintiff in the antecedent proceedings lacked probable cause to prosecute those proceedings; (2) the primary purpose of those proceedings was something other than to secure an adjudication of the claims asserted there; and (3) the antecedent proceedings were terminated in favor of the party now asserting the tortious interference claim."

*Id.* (internal citations omitted).

One question the *Mantia* court did not answer and that has yet to be addressed by the Oregon Supreme Court or Oregon Court of Appeals is "the question of whether or which other conduct that does not satisfy the elements of wrongful initiation may still overcome the privilege where immunizing that conduct would not serve the purposes of the litigation privilege." *Chase v. Gordon, Aylworth & Tami, P.C.*, No. 3:18-cv-00568-AC, 2020 WL 1644310, at *8 (D. Or. Feb. 14, 2020), *report and recommendation adopted*, 2020 WL 3977608 (D. Or. July 14, 2020). This is precisely the question at issue in the case at hand.

Some cases from this district lend support to the notion that "the *only* exception to Oregon's litigation privilege is for conduct that satisfies the elements of wrongful initiation." *Id.* (emphasis in original); *see Yeti Enters. Inc. v. NPK, LLC*, No. 3:13-cv-012003-ST, 2015 WL 3952115, at *5 (D. Or. June 29, 2015) (conflating the broad language in *Mantia* with conduct that satisfies the elements of a claim for wrongful initiation as "the only exception to th[e] absolute privilege"); *MacVicar v. Barnett*, No. 3:18-cv-01378-HZ, 2019 WL 2361040, at *11 (D. Or. June 1, 2019) (rejecting argument that the defendants' statements constituted extrinsic fraud on the court and stating that "[i]t is immaterial . . . whether the

6

statements were made in bad faith or with malice. . . . With the sole exception of claims for wrongful initiation . . . , a plaintiff cannot bring tort claims against a defendant for statements made in the course of or incidental to litigation regardless of their purpose." (internal citations omitted)).  Other cases from this district have focused on *Mantia*'s broader principle, which "describe[es] a limit on the litigation privilege that addresses more than just conduct satisfying the elements of wrongful initiation."  *Chase*, 2020 WL 1644310, at *9; *see Coultas v. Liberty Mut. Fire Ins. Co.*, No. 3:15-cv-00237-PK, 2016 WL 2637802, at *4 (D. Or. May 9, 2016) (emphasizing that the litigation privilege does not apply in instances where "[i]mmunizing the conduct . . . would not further the ability of parties to vindicate their rights in court without fear of retaliatory lawsuits.").

In *Chase*, the plaintiffs alleged that the defendants, a law firm with a large debt collection practice and the firm's internally owned service of process company, represented in a lawsuit to collect on the plaintiffs' delinquent accounts that the defendants would seek only "actual costs and disbursements," but that the defendants then submitted "cost statements for expedited service fees that were neither necessary, reasonable, nor actually incurred."  2020 WL 1644310, at *1-2 (internal quotation marks and citation omitted).  Based on these allegations, the plaintiffs brought claims against the defendants under the Uniform Trade Practices Act ("UTPA") and for common law unjust enrichment.  *Id.*  The defendants sought to employ the litigation privilege to immunize themselves against the plaintiffs' claims, arguing that the defendants' conduct was undeniably related to the litigation and that the only exception, for conduct that satisfies the elements of wrongful initiation, did not apply.  *Id.* at *5, 7.

The court declined to immunize the defendants' conduct.  *Id.* at *9.  Reciting the principles set forth in *Mantia*, *MacVicar*, *Coultas*, and other relevant cases, the *Chase* court held that "[e]ven conduct that does not meet the elements of wrongful initiation may fall outside the litigation privilege if it does not serve the purpose of enabling the parties to vindicate their rights in court without fear of retaliation."  *Id.*  The court reasoned that "[i]mmunizing the [defendants'] conduct . . . would have no bearing on attorneys' ability to pursue justice for their clients in the litigation," and that "instead of securing freedom from retaliation for actions taken to vindicate a claim, immunizing the conduct alleged here would secure cover

7

for wrongs that escape redress." *Id.* The court further emphasized that "[i]mmunizing [the] alleged conduct in this case would undermine the pursuit of justice and thwart the policy behind the litigation privilege because the alleged conduct constitutes fraud on the court." *Id.*

"Fraud on the court" is generally defined by courts in accord with the definition set forth in *Moore's Federal Practice*:

> "Fraud upon the court should . . . embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

*Id.* at *9-10 (quoting *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999)). The *Chase* court provided further explanation of what conduct constitutes "fraud on the court," writing:

> "Stated alternatively, a 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense. Whereas the litigation privilege aims to ensure the courts function as forums to vindicate the parties' rights, fraud on the court subverts that aim by preventing a court from functioning as an impartial adjudicator. Accordingly, immunizing conduct that constitutes fraud on the court is unlikely to serve the purposes of the litigation privilege."

*Id.* at *10 (internal citations and quotation marks omitted).

**B.    The Absolute Litigation Privilege Does Not Immunize Indian Harbor's Conduct**

As an initial matter, Indian Harbor and its counsel's conduct at the arbitration hearing was directly related to this litigation and certainly passes the liberal standard used to determine whether to consider the application of the absolute litigation privilege. Further, the arbitration hearing was a "quasi-judicial proceeding" to which the privilege applies. *See, e.g.*, *Budget Rent-A-Car of Wash.-Or., Inc. v. Todd Inv. Co.*, 43 Or. App. 519, 523, 603 P.2d 1199 (1979) (describing arbitrators as acting "quasi-judicially"). However, the Court finds persuasive the *Chase* court's understanding of the scope of the privilege as set forth in *Mantia*. In this Court's view, the *Mantia* court made clear that conduct should not be immunized by the absolute litigation privilege if immunizing that conduct would not serve the purposes of privilege, regardless of whether that conduct satisfies the elements of wrongful initiation.

8

Here, the Court cannot say as a matter of law that Indian Harbor's conduct is protected by the absolute litigation privilege. Taking plaintiff's allegations as true and drawing every reasonable inference in plaintiff's favor, as this Court must, plaintiff has demonstrated that Indian Harbor's conduct constitutes fraud on the court and that immunizing that conduct "would undermine the pursuit of justice and thwart the policy behind the litigation privilege." *Chase*, 2020 WL 1644310, at *1. By withholding expert discovery and then putting on false testimony by that expert, as well as introducing responsive yet unproduced discovery surveillance video, and *particularly* in the context of Indian Harbor's previous discovery nondisclosures that resulted in Lyft's dismissal, plaintiff has alleged facts sufficient to show that Indian Harbor has "sentiently set in motion [an] unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* at *10.

Indian Harbor couches its conduct as "litigation strategy," arguing that its "litigation methods . . . were effective in convincing the arbitrators to award her less damages than she was seeking." Mot. 9. The Court is not persuaded. Indeed, this Court is disinclined to immunize under the privilege a litigation strategy that not only allows, but affirmatively intends, to obtain a favorable result by unfairly interfering with the judicial system's ability to function as an impartial adjudicator. Further, immunizing Indian Harbor's conduct would not "secur[e] freedom from retaliation for actions taken to vindicate a claim," but rather "would secure cover for wrongs that escape redress." *Chase*, 2020 WL 1644310, at *9. Indian Harbor argues to the contrary on this point, asserting plaintiff may (and did) address any alleged discovery violation with an evidentiary objection, but this argument misses the mark. Plaintiff could not know to object to Indian Harbor's expert's testimony as false where Indian Harbor did not produce to plaintiff the expert discovery that would indicate to plaintiff that the testimony was false in the first instance. Further, plaintiff cannot otherwise seek redress of the wrong that resulted from Indian Harbor's conduct: namely, the adverse, binding arbitration damages decision.

Consequently, the Court declines to dismiss plaintiff's claims for defamation and IIED.

## CONCLUSION

For the foregoing reasons, Indian Harbor's Motion to Dismiss, ECF [120], is DENIED.

IT IS SO ORDERED.

DATED this 30th day of September, 2024.

_____
Adrienne Nelson
United States District Judge